COLE, Circuit Judge,
concurring.
Though I concur in the majority’s judgment I write separately because my view of a disability plaintiffs burden under the Americans with Disabilities Act (“ADA”) differs from that of my colleagues.
The majority finds that Jakubowski’s claim cannot proceed to trial because he has not put forth evidence sufficient to show that he is qualified to be a family practice resident with reasonable accom *204 modation. While I agree with this conclusion, the majority’s analysis incorrectly finds fault in Jakubowski’s failure to propose to Christ Hospital an accommodation robust enough to address all of his Asperger’s related deficiencies at a meeting between Jakubowski, his attorney and Christ Hospital, which was held prior to his termination, a little less than three weeks after he was diagnosed with Asperger’s, and before he filed suit. By evaluating and rejecting Jakubowski’s claim based on his initial accommodation request for knowledge and understanding of Jakubowski’s disability from his hospital coworkers, rather than the more comprehensive accommodations Jakubowski set outs through expert testimony in opposition to summary judgment, the majority holds that an ADA discrimination plaintiff must always muster a trial-ready accommodation proposal for his employer prior to termination (or any other adverse employment action) to prove that the employer unlawfully discriminated against the employee based on his disability.
An employer violates the ADA by “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.” 42 U.S.C. § 12112(b)(5)(A). We have interpreted this language to require an ADA plaintiff to make a threshold showing that he is qualified for the relevant position with reasonable accommodation. See Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1183 (6th Cir.1996). As the ADA demands that the employee’s disability be “known” to the employer for liability to attach, a plaintiff must generally also have informed his employer of his disability and requested an accommodation prior to the time at which an employer takes adverse action against a disabled employee. See Monette, 90 F.3d at 1186 n. 13 (requiring a plaintiff to show “actual or constructive knowledge of the disability as part of a prima facie case”) (internal quotation marks omitted); Crocker v. Runyon, 207 F.3d 314, 319-20 (6th Cir.2000) (employer has no obligation to offer accommodation where employee never requested one) (citing Kaltenberger v. Ohio College of Podiatric Med., 162 F.3d 432, 437 (6th Cir.1998)).
But we have never squarely held, as the majority does today, that the sufficiency of an ADA plaintiffs showing that he is otherwise qualified must be analyzed exclusively in light of the scope of the accommodation he requested from his employer prior to his termination from his position, even where more ample evidence that a plaintiff is otherwise qualified or that a defendant acted with discriminatory intent, emerges through discovery. The onus to prove — as a matter of law — that an ADA plaintiff can do the job with the right accommodation is triggered by the filing of a discrimination lawsuit, not by the prospect of termination. See, e.g., Monette, 90 F.3d at 1183 (describing a disability plaintiffs burden to propose a reasonable accommodation in the context of a discrimination lawsuit). To hold otherwise is counter to the ADA, which forbids employers from discriminating “against a qualified individual on the basis of disability.” 42 U.S.C. § 12112(a). The majority’s rule impliedly assumes that if the plaintiff does not make an affirmative showing to the employer — prior to termination — that he is a qualified individual with his proposed reasonable accommodation, then the employer necessarily could not have acted with discriminatory intent in violation of the ADA when it fired him. Yet the fact that an employee does not perfectly convey to his employer the precise accommodation that would allow him to do his job prior to termination does not mean, as a rule, that the employer did not know that the employee could perform his work with a reasonable accommodation. If an em *205 ployer was aware of its own accord that a person was otherwise qualified, a jury could, given other facts consistent with discrimination, permissibly infer that such an employer had acted with discriminatory intent in terminating the employee.
Jakubowski’s case is just such an instance where the employer — a teaching hospital — is likely to be in a better position to know what accommodations to his Asperger’s symptoms could make him otherwise qualified, than Jakubowski is. But the majority’s rule would render whatever inferences of discriminatory intent a jury could draw from any facts related to Christ Hospital’s knowledge irrelevant because Jakubowski did not ask Christ Hospital for the right accommodations before he was fired. Of course, such circumstantial evidence would not relieve the plaintiff of his burden to show at trial that he is qualified for the position with reasonable accommodation — whatever that proves to be — but nothing in the ADA or our prior holdings shackles a plaintiff to his initial, pre-termination proposed accommodation as he attempts to clear this significant evidentiary hurdle.
More pointedly, ADA regulations anticipate that an employee may not be in the position to know what a reasonable accommodation to his condition is; they require that the employee and the employer engage in an interactive process with the end of jointly determining what accommodations are possible and adequate. See Kleiber, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o )(3)). The majority holding would undermine the force of this mandatory interactive process by incentivizing employers to withhold potential accommodations in the hopes that the employee will be held to his initial and legally inadequate accommodation in subsequent litigation.
Setting these points of law aside, however, I agree with the majority’s conclusion that Jakubowski has failed ultimately to show that he is otherwise qualified. In opposition to summary judgment, Jakubowski attempted to meet that burden by submitting evidence of Asperger’s accommodations beyond the “knowledge and understanding” which he initially proposed to Christ Hospital prior to his termination. Nonetheless, Jakubowski’s claim fails because even with those additional accommodations (which do address all the essential job functions that a family practice medical resident must perform) he has not shown that he was otherwise qualified to be a family practice resident. The fatal flaw is Jakubowski’s expert testimony. Though the expert report proposes accommodations that might remedy the performance problems that Christ Hospital cited in its termination of Jakubowski, nothing in the report — or elsewhere in the record — provides a reasonable jury with a basis to conclude that these accommodations would actually succeed in remedying Jakubowski’s Asperger’s-related job deficiencies. Because the evidence of the proposed accommodations’ likelihood of success is too attenuated for a jury to find in Jakubowski’s favor, summary judgment for Christ Hospital is appropriate.